UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**

2004 MAY 27 A 11: 16

U.S. DISTRICT COURT
BRIDGEPORT, CONN

SHAKUNTALA SCHNIRRING,

      Plaintiff,

  V.

METRO-NORTH RAILROAD COMPANY,:

      Defendant,

  V.

STEADFAST INSURANCE COMPANY,
Third-Party Defendant.:    April 30, 2004

Civ. Action No. 3:01 CV 02137 (SRU)

## MEMORANDUM OF LAW IN SUPPORT OF
## REQUESTED RELIEF

THE THIRD-PARTY DEFENDANT,
STEADFAST INSURANCE COMPANY
By:

*signature*

Nancy Lyness (CT 23852)
WHITE FLEISCHNER & FINO, LLP
24 East Avenue, #295
New Canaan, CT 06840
Our File No.: 210-10360

*Nancy Lyness (CT 23852)*
*Of Counsel*

## Preliminary Statement

For all of the reasons discussed herein, defendant STEADFAST INSURANCE COMPANY ("STEADFAST") respectfully submits that the court should dismiss METRO NORTH'S Third-Party Complaint against it, either pursuant to *Fed. R. Civ. P. 12[c]*, or *Fed. R. Civ. P. 56*, and issue a corresponding Order declaring that METRO NORTH is not entitled to a defense or indemnification under the STEADFAST Force Account Work policy of insurance in question.

*Fed. R. Civ. P. 12(c)*, entitled "Motion for judgment on the pleadings", provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in *Rule 56*, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by *Rule 56*.

In accordance with *Rule 56(c)* of the *Federal Rules of Civil Procedure*, a District Court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. In making this determination, the Court's role is not to review disputed factual issues, but rather, it is to reach a conclusion as to whether there exists a "genuine and material issue for trial." *Hudson Hotels Corp. v. Choice Hotels Int'l, Inc., 995. F.2d 1173, 1175 (2nd Cir. 1993)*.

If the party opposing the motion is unable to establish the existence of an element essential to its case on which it bears the burden of proof at trial, a genuine issue of fact cannot exist "since a complete failure of proof concerning an essential element of the non-moving

2

party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cartrett, 477 U.S. 317, 106 S.Ct. 254 (1986).*

STEADFAST maintains for the reasons set forth herein, that it is entitled to either judgment on the pleadings, or summary judgment dismissing the Third Party Complaint, and further maintains that should the court find some reason to deny the requested relief, it should at the very least, sever the third-party coverage action from SHAKUNTALAH SCHNIRRING'S primary liability action to recover damages against METRO NORTH for injuries she allegedly sustained during the course of her employment.

## SYNOPSIS OF RELEVANT FACTS AND PROCEDURAL HISTORY

On **November 14, 2001**, the plaintiff, SHAKUNTALAH SCHNIRRING, commenced this *FELA* action against METRO NORTH to recover damages for injuries she allegedly sustained on **November 21, 1998,** during the course of her employment for the defendant METRO NORTH. At the time of the accident giving rise to this lawsuit, MS. SCHNIRRING was a foreman of the janitorial staff responsible for cleaning METRO NORTH commuter trains at the New Haven train station/yard.

At the time of the accident, as well as on the date SCHNIRRING commenced this action, METRO NORTH had in effect a STEADFAST Force Account Insurance Policy. The policy's insuring agreement obligates STEADFAST to defend and indemnify METRO NORTH for bodily injury claims "arising out of or resulting from the Force Account Work conducted by the Named Insured."

The policy defines "Force Account Work" as:

"work or operations performed by employees of the Named Insured for federal, state, municipal or other political subdivisions or governmental legal entities or for companies, corporations, organizations or other legal entities or

3

for private concerns or individuals wherein the Named Insured is reimbursed for the cost of such work or operations. Force Account Work includes liability of the Named Insured arising out of any act, error, omission, or mistake committed by the Named Insured in the rendering or failure to render service or advice of a professional nature in connection with such work or operations..."

The Conditions section of the policy requires the insured, upon becoming aware of an accident on the premises, to, *inter alia,* notify STEADFAST of the accident, and provide it with "sufficient information to identify the insured and reasonably obtainable information as of the date, time, place and circumstances of the Accident and a description of any injuries or damage."

Additionally, the policy also contains a Condition entitled "D. Prevention of Further Claims", which states that:

"As soon as the insured becomes aware of an Accident or receives a Claim, the Insured shall immediately and at its own expense take all reasonable steps to prevent further covered injury resulting from the same Accident or conditions which might cause another Accident."

Furthermore, the Conditions section of the policy also requires the insured to do the following in the event of a Claim or Suit:

A. Notice of Claim(s) or Suits(s):

The insured shall **immediately notify the Company of any Claim(s) or Suit(s):** (emphasis added)

1. **If any Claim(s) or Suit(s) is received by an Insured the Named Insured must notify the Company as soon as practicable of the Claim(s) or Suit(s) and to the extent possible, notice should include:**

(a) how, when and where the Accident took place;
(b) the names and addresses of any injured person and witnesses; and
(c) the nature and location of any injury or damage arising out of the Accident.

**Notice of an Accident is not notice of a Claim.** (emphasis added)

2. **The insured must:**

(a) **immediately send to the Company copies of any demands, notices, summonses or legal papers received connection with the Claim(s) or Suit(s)**\*\*\*

It is uncontroverted that, notwithstanding these policy Conditions, METRO NORTH, in response to the *Schnirring* Complaint, did not tender its defense to the third-party defendant

4

STEADFAST. Instead, it assigned the Stamford, Connecticut firm of Ryan, Ryan, Deluca & Johnson to defend METRO NORTH against MS. SCHNIRRING'S claims.

The discovery exchanged during the course of the *Schnirring* law suit discloses that METRO NORTH first learned of SCHNIRRING'S accident and alleged injuries in **December of 1999**, when SCHNIRRING provided METRO NORTH with a written statement concerning the event. In this statement, SCHNIRRING maintained that the accident resulting in injury to her back occurred when she and another METRO NORTH employee were trying to free a Cushman utility cart (a small, motorized vehicle) which had "become stuck between track 1 and track 3." She further maintains in this written statement that the Cushman cart had become lodged between the tracks on many other occasions "because the crossing has been removed."

In a **December 16, 1999** letter from METRO NORTH to SCHNIRRING, METRO NORTH acknowledged receipt of SCHNIRRING'S statement claiming a back injury, as well as the location where it occurred. In its letter, METRO NORTH further advised MS. SCHNIRRING that "because of the seriousness of the situation, I am forwarding this memo along with a copy of your letter to Mr. G.R. Butt, CMO, as well as the Safety and Claims Department for review and recommendation." It is uncontroverted that METRO NORTH did not, at the time it learned of MS. SCHNIRRING'S accident and claim of bodily injury, furnish STEADFAST with notice of the occurrence and/or claim.

The law suit proceeded through discovery, with the deposition of MS. SCHNIRRING being conducted by METRO NORTH-retained defense counsel in February of 2003 (which is almost a year and a half after SCHNIRRING'S commencement of the action, and more than

5

three years after MS. SCHNIRRING gave METRO NORTH her written statement of the incident).

SCHNIRRING testified at her deposition, consistent with her written statement from December of 1999, that the accident occurred as she attempted to free a Cushman cart which had become lodged in some loose gravel on the train track. She attributed the condition to the removal, during the course of construction work, of a paved pathway that METRO NORTH had previously provided to its employees and pedestrians as a means of crossing the tracks.

Shortly after MS. SCHNIRRING'S deposition, METRO NORTH tendered its defense and indemnification in the *Schnirring* matter to STEADFAST. It is undisputed that this tender, which occurred almost four and a half years after SCHNIRRING'S alleged accident, almost three and a half years after METRO NORTH first learned of the accident and plaintiff's claim of back injury, and approximately a year and a half after SCHNIRRING'S commencement of the law suit, constituted METRO NORTH'S first notification to STEADFAST of the accident, claim and lawsuit.

In its tender letter, METRO NORTH maintains that it was "unaware of the specific circumstances surrounding plaintiff's accident until her deposition was taken last month." METRO NORTH further claimed that MS. SCHNIRRING'S deposition testimony indicates that the spot where the accident allegedly occurred was "an area under construction as part of the New Haven Interlocking Project covered under Amtrak Force Account Work Order No. 3017". According to METRO NORTH, the claim was therefore covered by the above-described Force Account Work policy of insurance which STEADFAST had issued to METRO NORTH.

STEADFAST rejected the tender, prompting METRO NORTH to initiate the above-captioned Third-Party action, which seeks a declaration that, with respect to the *Schnirring* law suit, it is entitled to coverage (defense and indemnification) under the STEADFAST policy. In its Third-Party Complaint METRO NORTH alleges that when MS. SCHNIRRING was deposed in February of 2003, METRO NORTH discovered **for the first time**, based upon SCHNIRRING'S testimony concerning the location of the accident and its alleged cause, that its STEADFAST policy should respond to the claim.

In response to the Third-Party Complaint, STEADFAST agreed to assume METRO NORTH'S defense while its coverage obligations were litigated in the Third-Party action. It assigned the law firm of Landman, Corsi, Ballaine & Ford to represent METRO NORTH in place and stead of the Ryan firm. The Ryan firm has now withdrawn as counsel of record for METRO NORTH. The issues defense and indemnification with regard to any judgment or settlement remain to be resolved in the Third-Party action.

In its Answer to the Third-Party Declaratory Judgment Complaint STEADFAST raises by way of Affirmative Defenses, *inter alia*, (1) that METRO NORTH violated multiple conditions of the STEADFAST policy, including, but not limited to the Notice of Accident Condition, the Notice of Claim Condition, and the Notice of Suit Condition, thereby forfeiting its right to coverage under the STEADFAST policy.

## LEGAL ARGUMENT

**POINT I**
**METRO NORTH'S VIOLATION OF THE STEADFAST POLICY'S NOTICE OF ACCIDENT, NOTICE OF CLAIM AND NOTICE OF SUIT CONDITIONS VITIATES METRO NORTH'S RIGHT TO COVERAGE UNDER THE STEADFAST POLICY**

The Steadfast policy's Notice Conditions require prompt notice of accidents, claims and law suits, and impose an obligation upon METRO NORTH to conduct an investigation upon learning of an accident, claim or suit. Specifically, the Notice of Accident condition requires METRO NORTH to provide reasonably obtainable information concerning the "date, time and place" of the accident, and the notice of claim/suit condition requires METRO NORTH, upon notifying STEADFAST as soon as practicable, to include in that notice:

(a) how, when and where the Accident took place;
(b) the names and addresses of any injured person and witnesses; and
(c) the nature and location of any injury or damage arising out of the Accident.

MS. SCHNIRRING'S written statement to METRO NORTH in 1999 certainly alerted METRO NORTH to the "accident" in question, requiring notice to STEADFAST concerning "date, time and place" of the incident. It is incontrovertible that this statement was actually received by, and acted upon (internally) by METRO NORTH in December of 1999. Additionally, the facts upon which METRO NORTH predicates its claim that it first learned, at SCHNIRRING'S February 2003 deposition that the STEADFAST policy applies, were contained in MS. SCHNIRRING'S written statement of December 1999.

Furthermore, the lawsuit, commenced in November of 2001, was both a "claim", and a "suit", requiring notice to STEADFAST as soon as practicable, including the "how, when and where" information set forth in the Notice of Claim/Suit Condition. Had METRO NORTH conducted any diligent investigation into the accident upon learning of its occurrence, and had it investigated again upon its receipt of the *Schnirring* suit papers, it would have confirmed well in advance of the plaintiff's deposition in February of 2003, all of the facts upon which it now relies in contending that the STEADFAST policy applies to this claim.

8

Finally, the Notice Condition, in addition to requiring notification, further required METRO NORTH to immediately forward the *Schnirring* pleadings to STEADFAST and to cooperate with STEADFAST in the investigation, settlement or defense of the claim/suit. METRO NORTH violated each one of the above-cited contractual obligations. As an excuse for its failure to comply with these critical conditions precedent to coverage under the STEADFAST policy, METRO NORTH claims that it "first learned", when the plaintiff was deposed in February of 2003, that the STEADFAST policy affords coverage for this claim.

As stated above, however, the documents exchanged during discovery reflect that in fact, METRO NORTH undisputedly learned of the incident, as well as the general location of its occurrence, **in December of 1999.** A diligent, timely investigation undertaken at that time, as required by the STEADFAST policy's Notice Conditions, would have provided METRO NORTH with the identical information it "first learned" during SCHNIRRING'S February 2003 deposition. Consequently, METRO NORTH possesses no valid excuse for its failure to timely notify STEADFAST of the accident, claim and suit of SHAKUTALLAH SCHNIRRING, and its material breach the policy's Notice Conditions results in an absolute forfeiture of its right to coverage under the subject policy.

Indeed, under Connecticut law, an insured's violation of its policy's notice condition absolves the insurer of its coverage obligations because prejudice to the insurer is presumed to have occurred as a consequence of the insured's delay. Where an insured has provided late notice of an occurrence, claim or suit, it is incumbent upon the insured to rebut the presumption of prejudice by offering proof of the "nonexistence of prejudice from delayed

notice." *Aetna Cas. & Surety Co. v. Murphy, 206 Conn. 409, 538 A.2d 219 (1988)*. Proving a negative is an onerous task, to say the least.

For example, in *SNET v. Zurich American Insurance Co., 2003 Conn. Super. LEXIS 1453 (Conn. Super. 2003)*, the court granted summary judgment in favor of the defendant insurer on the basis of the plaintiff insured's breach of the policy's notice condition. There, the defendant insurer contended that it was materially prejudiced by the insured's failure to notify it of two claims arising out of an automobile accident. Aside from the loss of the ability to have controlled the insured's defense and prepare the case for trial, the insurer also claimed prejudice based upon the insured's failure to conduct surveillance on one of the plaintiffs, and its failure to depose an eyewitness who had since died. The insurer also claimed that the insured's accident reconstruction expert had incorrectly replicated the accident, thus rendering the replication virtually useless.

The court noted that where an insured has breached its policy's notice condition, prejudice to the insurer is presumed, as a matter of law (citing *Hotkowski Aetna Life & Casualty Co., 224 Conn. 145, 148, 617 A.2d 451 (1992)*). The court further acknowledged that the insured bears the heavy burden of proving the lack of prejudice. It then ruled that the insured failed to raise any triable issue to rebut the presumption of prejudice. According to the court, the insured's lengthy delays in placing the carrier on notice of the lawsuits, "amply supports a conclusion that the defendant was materially prejudiced", as a matter of law.

Importantly, the court also ruled that the insured's contention that its own attorney's representation of its interests had been "competent, professional and not deficient", was insufficient to rebut the presumption of prejudice. According to the court:

10

"More than three years passed from initiation of lawsuits to notification of the defendant. In most civil cases that is a long time. That is time during which discovery is conducted, investigations are undertaken and strategic decisions are made. Once those things occur, the positions of the parties become fixed. The late notice meant that the defendant did not have the opportunity to assist the insured in making any tactical decisions in preparation for trial or to prepare any of its own evidence."

Continuing, the court stated:

"It is enough that the defendant did not have an opportunity to evaluate the usefulness of the witness to the case. Thus, the missed opportunity to evaluate and/or preserve the testimony prejudiced the defendant."

The court also acknowledged that while the insured provided legitimate reasons for the tactical decisions its own attorneys made during the course of the litigation, "this does not alter the fact that the defendant was deprived, forever, of the opportunity to take part in that process. The injuries to [plaintiff] were severe and serious. It is possible that after reviewing the file contemporaneously, the defendant would have concurred with SNET. But, without contemporaneous review, it is impossible to say which perspective would have prevailed."

Reasoning further, the court also aptly noted:

"When the plaintiff failed to notify the defendant of the pending cases until the eve of trial, it forfeited the defendant's opportunity to meaningfully participate in the preparation of the case. The plaintiff's argument that the defendant had 'an opportunity to engage in discovery, investigation, or preparation it deemed necessary' is a bit surprising. This time, to which the plaintiff refers, was less than two months. Having itself had over three years to prepare the case, this court cannot readily accept the plaintiff's blithe claim that less than two months would have been sufficient to prepare. These were not small or insignificant cases. Hundreds of thousands of dollars were at stake. Before deciding whether to pay that kind of money or to defend, parties have the right to fully prepare and to completely understand the relevant (and even irrelevant) issues."

Finally, the court concluded that its decision could not be influenced by the competency or efficiency of the representation afforded the insured. It stated, "[t]his court does not believe that it need reach or decide the issue of professional competence to rule on this matter in this case...**It is possible, and the court does not find otherwise, that the**

11

**representation to SNET was competent and adequate, and the defendant was still prejudiced by the late disclosure. For this court, the lateness of the disclosure and the loss of opportunities decide this issue. They require that the court grant the defendant's motion. This case is about lost time and lost opportunity, not about competency of legal representation."** (Emphasis added)

And see also,*Hartford Ins. Co. v. Colonia Ins. Co., 58 Conn. App. 39; 750 A.2d 1158 (App. Div.)* [Affirming trial court's award of summary judgment in favor of insurer on the ground that insured failed to rebut the presumption of prejudice to its insurer as a consequence of its late notice of a claim.], *United Techs. Corp. v. American Home Assur. Co., 989 F. Supp. 128 (D. Conn. 1997)*

Like the *SNET v. Zurich, supra,* case, the situation at hand similarly reeks of "missed opportunity" resulting in material prejudice to STEADFAST. The case is scheduled to proceed imminently to trial, with STEADFAST placed squarely in the position of having lost any meaningful opportunity to, *inter alia*, conduct its own investigation into the accident, to track down and interview witnesses, to conduct surveillance, to explore the possibility of fraud, to determine the extent to which any third parties were/are viable sources of contribution and/or indemnification, and to evaluate and assert all potentially relevant affirmative defenses.

METRO NORTH'S own contention that it did not learn until the plaintiff's deposition, in February 2003, that the manner in which the accident occurred and the location of its occurrence implicate the STEADFAST policy, compel the court to conclude that METRO

NORTH'S own investigation procedures with regard to MS. SCHNIRRING'S accident and claim, were grossly deficient.

In addition to the foregoing, STEADFAST has also been denied any opportunity to determine for itself whether an early resolution of the claim through settlement would have been the preferred course of action. STEADFAST, having been stripped by METRO NORTH of its contractual right to take charge of early settlement negotiations, as well as other strategical and tactical opportunities, cannot properly be held responsible for the claim at the present point in time, particularly now that the plaintiff has become increasingly obstinate and irrational about settlement and indeed, has taken her earlier settlement demand off the table. This is precisely the type of prejudice addressed by the court in the *SNET* case, and is the direct result of the "missed opportunity" arising from an insured's delay in providing notice of occurrences, claims and law suits to its insurer.

Given (1) the imminency of trial, (2) STEADFAST'S corresponding inability to alter the course of the litigation in order to bring it into conformity with its own way of handling matters, and (3) the case law discussed above, which (a) places great weight on lost opportunity, and (b) places little emphasis upon the insured's receipt of competent representation by its own counsel, METRO NORTH simply cannot rebut the presumption of prejudice to STEADFAST which arises from METRO NORTH'S failure to timely provide STEADFAST with notification of the accident, claim and law suit.

Also contributing to the element of prejudice, is the fact that STEADFAST no longer has any meaningful way of ascertaining whether METRO NORTH breached any of the policy conditions, separate and apart from the Notice Conditions, which might preclude METRO

NORTH'S right to recover under the subject policy. For example, STEADFAST has no way of determining whether METRO NORTH complied with the above-cited Condition requiring it to rectify accident-producing hazards in order to prevent further similar accidents from occurring in the future. There may be other conditions in the policy, as well, with which METRO NORTH failed to comply, but which STEADFAST, due to the loss of its right to conduct a timely investigation, will be unable to develop and rely upon as a basis for disclaiming coverage.

**POINT II**
**THE COURT MUST, AT THE VERY LEAST, SEVER THE THIRD-PARTY ACTION FOR COVERAGE FROM THE MAIN ACTION TO RECOVER DAMAGES FOR PERSONAL INJURY**

The questions involved in MS. SCHNIRRING'S action against METRO NORTH (the main action) are whether negligence on the part of METRO NORTH resulted in the plaintiff's alleged injuries, and the amount of damages SCHNIRRING sustained as a consequence of the accident. The issue in the METRO NORTH'S third-party action against STEADFAST is whether it is entitled to coverage under the STEADFAST policy of insurance. It follows, therefore, that at the very beginning of the trial, the jury would know that "insurance" was involved in the case.

The prejudice which results from this knowledge is manifest. The jury might be more disposed than otherwise, if it saw fit to render a verdict in favor of SCHNIRRING (and especially if it chose to award a generous verdict), to resolve the question of insurance coverage against STEADFAST. *See, e.g. Kelly v. Yannotti, 4 N.Y. 2d 603, 176 N.Y.S. 2d 673 (1958)* Or, if the jury saw fit to resolve the question of insurance coverage against the

14

insurance company, knowing then that the insurance company (and not METRO NORTH) would be ultimately liable, it might be more disposed than otherwise to render a verdict in favor of SCHNIRRING on the issue of METRO NORTH'S liability for her accident and alleged injuries. *Id.*

The requested severance is further warranted because, in the event the court denies the dismissal prong of STEADFAST'S instant motion, STEADFAST must be permitted an opportunity to conduct whatever discovery is necessary to substantiate its coverage defenses. Indeed, forcing STEADFAST to proceed in an action which is about to go to trial, would in effect be awarding METRO NORTH for its dilatory conduct in failing to conduct a timely investigation and to timely notify STEADFAST of the accident, claim and law suit.

Finally, STEADFAST and METRO NORTH are currently in dispute with respect to whether STEADFAST'S agreement to defend METRO NORTH against the claims of the plaintiff, encompasses the obligation to prosecute METRO NORTH'S third-party action for coverage against STEADFAST.

STEADFAST maintains that the prosecution of the third-party coverage action exceeds the scope of its duty to defend; while the duty to defend would include the prosecution of claims against other parties to a law suit and the insurers of those other parties (for example, for contractual or common-law indemnification) an insurer's agreement to defend does not encompass the prosecution of an insured's coverage claim against its own insurer. Indeed, it is unreasonable to expect that an insurer, under a defense obligation, would have a duty to fund a coverage claim against itself.

Presently, METRO NORTH'S expectation is that STEADFAST-retained defense counsel for METRO NORTH will be prosecuting the recently-commenced third-party action against STEADFAST. This expectation gives rise to a patent conflict of interest; STEADFAST maintains that STEADFAST-retained attorneys cannot properly prosecute a coverage claim <u>against</u> STEADFAST. METRO NORTH'S current defense counsel (retained by STEADFAST) has therefore advised METRO NORTH and METRO NORTH'S prior defense counsel that it will not be prosecuting the third-party claim.

It is STEADFAST'S position that METRO NORTH'S prior defense counsel, who were retained by METRO NORTH, and who have withdrawn as attorneys of record in this action, must step back into the case for the purpose of prosecuting METRO NORTH'S claim for coverage against STEADFAST. Unless and/or until the court rules on this issue, the coverage claim cannot go forward and hence, severance of the third-party action should be granted in the event the court does not dismiss the third-party Complaint in its entirety in response to STEADFAST'S instant motion.

WHEREFORE, the third-party defendant STEADFAST INSURANCE COMPANY prays that its motion be in all respects granted.

THE THIRD-PARTY DEFENDANT,
STEADFAST INSURANCE COMPANY
By: *Nancy Lyness*
Nancy Lyness (CT 23852)
WHITE FLEISCHNER & FINO, LLP
24 East Avenue, #295
New Canaan, CT 06840
Our File No.: 210-10360
