UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------X

Shakuntala Schnirring                Civil Action
                                     No: 3:01CV02137(SRU)

    Plaintiff

VS.

Metro-North Railroad Company         May 27, 2004

    Defendant

----------------------------------------X

## PLAINTIFF'S TRIAL BRIEF

**A.  Statute**

The Federal Employers' Liability Act, 45 U.S.C. § 51 states:

> Every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
>
> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce . . . shall . . . be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

**B.  Purposes of the Statute**

The Federal Employers' Liability Act has been characterized as remedial and humanitarian in nature. Urie v. Thompson, 337 U.S. 163, 181-82 (1949). The general congressional intent in enacting the legislation was to liberalize the remedies of injured employees in order to meet changing conditions and concepts of industry's duty toward its workers. Kernan v. American

Dredging Co., 355 U.S. 426, 431-43 (1958). The Act seeks to adjust the cost of injury equitably between employee and employer, Sinkler v. Missouri Pacific R. Co., 356 U.S. 326, 329 (1958), to stimulate carriers to take measures for the prevention of injury to their employees, Jamison v. Encarnacion, 281 U.S. 635, 640 (1930), to protect the health of employees, Urie, supra at 191, and to promote the public interest, Minneapolis, S. P. & S. S. M. R. Co. v. Rock, 279 U.S. 410, 413 (1929). It represents "an avowed departure from the common law", and courts must be ever mindful of the distinctive character of the statute. Sinkler, supra at 329.

C.  **Foreseeability**

Under the FELA, all the injured employee need establish is that some harm could occur from the allegedly negligent conditions. The particular injury that resulted need not have been foreseeable. It is sufficient to establish that any harm was a reasonably foreseeable result of the condition in issue. The Supreme Court has held that the defendant "need not foresee the particular consequences of his negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable." Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 120 (1963); Harrison v. Missouri Pac. R.R. Co., 372 U.S. 248, 249 (1963); see also, Syverson v. Consolidated Rail Corporation, 19 F.3d 824, 826-827 (2nd Cir. 1994). FELA liability is imposed notwithstanding the fact that the consequences of the defendant railroad's failure to exercise care are improbable or unexpectedly severe. In Gallick, for example, the plaintiff suffered the loss of both legs as a result of the bite of an insect emanating from a stagnant, infested pool on the railroad's premises, and the Supreme Court held the element of foreseeability was satisfied.

D.  **Negligent Acts or Omissions**

Any negligent act or omission of an officer, employee, or other agent of a corporation, in the performance of his duties, is held in law to be the negligence of the corporation. Since a corporation can act only through its officers, or employees, or other agents, the burden is on the

plaintiff to establish that the negligence of one or more officers, employees, or other agents of the defendant (other than the plaintiff himself) was a cause of the injuries and damages sustained by the plaintiff. See, e.g., Cutter v. Cincinnati Union Terminal Co., 361 F.2d 637, 640 (6th Cir. 1966).

In Sinkler v. Missouri Pac. R.R. Co., 356 U.S. 326, 329 (1958), the Supreme Court recognized that the FELA was "an avowed departure from the rules of the common law" and ruled that when a railroad employee's injury is caused in whole or in part by the fault of others performing under agreement the operational activities of the employer railroad, such others are agents of the railroad within the meaning of the FELA. Sinkler, supra at 331-32. The court reasoned that a railroad is "a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor," necessitating that an "accommodating scope must be given to the word 'agents' to give vitality to the standard governing the liability of carriers to their workers injured on the job." Sinkler, supra at 330-31. The concept of 'operational activity' extends coverage of the FELA beyond the scope of ordinary agency, and is a form of constructive agency arising out of the railroad's nondelegable duty of care to its employees. Smith v. Norfolk & Western Ry. Co., 407 F.2d 501, 502 (4th Cir. 1969), cert. denied, 395 U.S. 979.

In Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 67 (1943), the Supreme Court considered the standard of care imposed on railroads by the FELA and declared that a violation is established where the railroad, its agents, or employees:

1. have been guilty of a lack of due care under the circumstances; or
2. have failed to do that which a reasonable man would ordinarily do or have done under the circumstances; and/or
3. have done something that a reasonable man would not have done under the circumstances.

Specifically, the Railroad owes a duty of care to its employees to, inter alia:

1. provide reasonably sufficient, competent and experienced help to do a particular task assigned to an employee. Blair v. B & O R. Co., 323 U.S. 600, 604 (1945); Davis v. Virginian R. Co., 361 U.S. 354, 356 (1960); Yawn v. So. Ry. Co., 591 F.2d 312, 317 (5th Cir. 1979), cert. denied, 442 U.S. 934 (1979);

2. warn of particular dangers in the task assigned when the employee exercising due care may not discover or be aware of it or may be inexperienced. Bassett v. N.Y. Central & St. L. R. Co., 235 F.2d 900 (3rd Cir. 1956); Erie R. Co. v. Collins, 259 F. 172, 177 (2d Cir. 1919), aff'd. 253 U.S. 77, overruled on other grounds, Chicago & Eastern Illinois Railroad Co., v. Industrial Commission of Illinois, 284 U.S. 296 (1952); Marmo v. Chicago, Rock Island & Pac. R.R. Co., 350 F.2d 236 (7th Cir. 1965);

3. inspect the railroad cars before it requires its employees to work on its trains. Shenker v. B & O R.R., 374 U.S. 1, 8, 83 S. Ct. 1667 (1963); Gadsden v. Port Authority Trans-Hudson Corp., 140 F.3d. 207, 209 (2nd Cir. 1998);

4. inspect and maintain places where its employees must work. Almendarez v. Atchinson, 426 F.2d 1095 (5th Cir. 1970); Williams v. Atlantic Coast Line R. Co., 190 F.2d 744 (5th Cir. 1971); Cazad v. Chesapeake & Ohio Ry., 622 F.2d 72, 75 (4th Cir. 1980); see also Sinclair v. Long Island Railroad, 985 F.2d 74, 77 (2nd Cir. 1993);

5. take further precautions which are possible and reasonable even though it had taken some precautions. Isgett v. Seaboard Coast Line R. Co., 332 F. Supp. 1127 (D.S.C. 1971);

6. assign employees work for which they are reasonably suited. Fletcher v. U. P. R. Co., 621 F.2d 902 (8th Cir. 1980), cert. denied, 449 U.S. 1110 (1981);

7. publish and enforce operating and safety rules adequate for the protection of its employees. Duncan v. St. Louis-San Francisco Railway Co., 480 F.2d 79, 85-86 (8th Cir. 1973); Flanigan v. Burlington Northern, Inc., 632 F.2d 880, 883-84 (8th Cir.), cert. denied, 450 U.S. 921 (1981); Ybarra v. Burlington Northern, Inc., 689 F.2d 147, 150-51 (8th Cir. 1982); Bailey v. Grand Trunk Line New England, 805 F.2d 1097, 1103 (2nd Cir. 1986), cert. denied, 484 U.S. 826 (1987);

    8. assign or qualify an employee for work that he is physically capable of performing. Nuttall v. Reading Company, 235 F.2d 546, 549 (3rd Cir. 1956); Miller v. Erie Lackawanna Ry. Co., 645 F.2d 140, 142 and 144 (2d Cir. 1981); Fletcher v. Union Pacific Railroad Company, 621 F.2d 902, 909 (8th Cir. 1980), cert. denied, 449 U.S. 1110 (1981); Ybarra, supra. 689 F.2d at 151-52;

    9. adequately supervise its employees' work and to instruct and prepare them for their work. Lindauer v. N.Y. Central R.R. Co., 408 F.2d 638, 640 (2d Cir. 1969); Cahill v. N.Y., N.H. & H. R. Co., 224 F.2d 637, 639-40 (2d Cir.), rev'd, 350 U.S. 898 (1955) remanded, 351 U.S. 183, 189-90 (1956), 236 F.2d 410, 411 (2d Cir. 1956), cert. denied, 352 U.S. 972 (1957).

**E.**   **Safe Place To Work**

    The Federal Employers' Liability Act imposes upon railroads engaged in interstate commerce to provide all of their employees with a reasonably safe place in which to work and to provide them with reasonably safe cars, engines, appliances, machinery, track, roadbeds, works, boats, wharves, and other equipment. Bailey v. Central Vermont R. Co., 319 U.S. 350, 352-53 (1943); Dennis v. Denver & Rio Grande Western Railroad Co., 375 U.S. 208, 211 (1963); Lavender v. Kurn, 327 U.S. 645, 651-53 (1946). The duty to provide a safe place to work is a continuing one and becomes "more imperative" as the risks increase. Bailey, supra at 353. "[T]he duty of the [Railroad] company to use reasonable diligence to furnish safe appliances is ever present, and applies to its entire business". Shenker v. Baltimore & Ohio R. Co., 374 U.S. 1, 9 (1963).

    The Railroad has a non-delegable duty to provide an employee with a safe place to work despite the fact that it may not own, control, or be under primary obligation to maintain the premises on which the employee is injured. Shenker v. B & O R.R., 374 U.S. 1, 7 (1963); Payne v. Baltimore & Ohio R. Co., 309 F.2d 546 (6th Cir. 1962), cert. denied, 374 U.S. 827 (1963). "A railroad is not relieved from liability . . . because of the existence of an unsafe condition brought about through the act of another and without fault, on the railroad's part." Payne, supra at 549.

Simply stated, a railroad

> may not legally delegate to another its duty to its employee, and thereby escape liability to such employee. . . . Under FELA the employer is the one owing the duty to the employee. The employee need not look elsewhere for his protection. He has a right under FELA to rely on his employer and none other. When the employer delegates its duty, or abdicates its control, the employer takes the risk, not the employee.

Payne, supra at 549. See also, Schiller v. Penn Central, 509 F.2d 263 (6th Cir. 1975).

The FELA requires the Railroad to provide its employees with reasonably safe, suitable, and adequate instrumentalities, equipment, or premises. Liability may be imposed for injuries resulting from the use of defective, unsafe, or inadequate tools, machinery, and appliances, which defect or inadequacy is due to design or lack of maintenance. Blair v. B & O, 323 U.S. 600 (1945). Also, a carrier is liable under the Act for failure to maintain its yards in a reasonably safe condition. Brown v. Western R. Co., 338 U.S. 294, 297-98 (1949). Actual notice of an unsafe condition is not necessary, for constructive notice will suffice. Nivens v. St. Louis Northwestern Ry. Co., 425 F.2d 114, 118 (5th Cir. 1970), cert. denied, 400 U.S. 879 (1970). In Cereste v. N.Y. N.H. & H.R. Co., 231 F.2d 50 (2nd Cir. 1956), cert. denied, 351 U.S. 951 (1956), the Second Circuit, in applying a congressionally directed strict standard of liability on the railroad, recognized that actual or constructive notice of an unsafe condition may be claimed under circumstances where the railroad has control of the premises.

The Railroad has a duty to make reasonable inspections. Webb v. Illinois C.R. Co., 352 U.S. 512, 521 (1956). In Williams v. Atlantic Coast Line R. Co., 190 F.2d 744, 748 (5th Cir. 1951), the court found that a railroad has an affirmative duty to make tests and inspections to discover dangers, and will be held to have had constructive notice of dangers which could have been discovered. See also, Beattie v. Elgin J. & E.R. Co., 217 F.2d 863, 866 (7th Cir. 1954).

**F.    Causation**

In FELA cases, the requirement of proximate cause has been eliminated. The defendant's negligence no longer has to be the sole, efficient, producing cause of the injury. The FELA

expressly refers to a railroad's liability for injuries "resulting in whole or in part" from its breach of duty, 45 U.S.C. §51, and this statutory language sets the standard of causation. The proper test of causation for the jury is simply whether the railroad's negligence played any part, <u>even the slightest</u>, in producing the injury for which damages are sought:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or <u>in part</u>" to its negligence. (Emphasis added.)
>
> The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.

<u>Rogers v. Missouri Pac. Co.</u>, 352 U.S. 500, 406-08 (1957). See also, <u>Gallick v. B & O R. Co.</u>, 372 U.S. 108, 114-17 (1962); <u>Williams v. Long Island Railroad Co.</u>, 196 F.3d 402, 406-07 (2nd Cir. 1999) (holding FELA creates relaxed standard for negligence and causation); <u>Ulfik v. Metro-North Commuter Railroad</u>, 77 F.3d 54, 58 & n.1 (2nd Cir. 1996) (same).

### G.     Sufficiency of Evidence

The standard for deciding the sufficiency of evidence in Federal Employers' Liability Act cases is markedly different than the standard used in other cases. On numerous occasions, the United States Supreme Court has reversed the judgments of lower courts that have taken away FELA verdicts from juries. See generally, 9 Wright & Miller, <u>Federal Practice & Procedure</u>,

§2526 (1971). In those cases, the Supreme Court held:

> that so long as there is evidence from which an inference might rationally be drawn, whether as to how the accident happened or whether defendant's conduct was negligent, it is for the jury to accept or reject that inference, even though the inference may be quite an improbable one and some other inference highly probable.

C. Wright, Federal Courts §95 at 642 (4th ed. 1983), citing to Lavender v. Kurn, 327 U.S. 645, 652-53 (1946), Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35 (1944), and Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506-08 (1957). As the Court stressed in Rogers, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." Rogers, supra at 506. And in Bailey v. Central Vermont Ry., 319 U.S. 350, 353 (1943), the Court noted: "[t]he debatable quality of that issue [of negligence ], the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury." All that is necessary to submit a case to the jury is a scintilla of evidence. Mendoza v. Southern Pacific Transportation Co., 733 F.2d 631 (9th Cir. 1984); Gibson v. Elgin E. & J. R.R., 246 F.2d 834, 836-37, 840-41 (7th Cir.), cert. denied, 355 U.S. 897 (1957). A jury's power to draw evidentiary inferences in an FELA trial is far greater than in common law actions. Williams, supra, at 406; Burns v. Penn Central Co., 519 F.2d 512, 514 (2d Cir. 1975). Also, when reviewing the sufficiency of the evidence, the court need only look to the evidence and inferences that support the FELA plaintiff's claim. Wilkerson v. McCarthy, 336 U.S. 53, 57 (1949).

Accordingly, very little evidence is sufficient to make an issue one for the jury in an FELA trial, and FELA trials differ from other cases in at least three crucial respects: first, an FELA jury is free to reject a highly probable inference and instead accept an

8

improbable inference; second, the plaintiff need present only a scintilla of evidence in order to entitle the case to go to the jury; and third, when deciding whether there is sufficient evidence for a case to go to an FELA jury, a court need look only to the evidence and inferences tending to support the plaintiff's case. See generally, 9 Wright & Miller, Federal Practice & Procedure, § 2526 at 555-56 (1971).

Appellate courts frown on the granting of directed verdicts in jury cases. In the words of the Second Circuit: "There is no doubt that in most cases it is in the best interests of efficient judicial administration for the trial judge to refrain from considering a motion for a directed verdict in favor of deciding a motion for judgment n.o.v." Mattivi v. South African Marine Corp., "Huguenot", 618 F.2d 163, 166 n. 2 (2d Cir. 1980), citing to 9 Wright & Miller, Federal Practice & Procedure, §2533 at 585-86 (1971); see also, Williams, supra, 196 F.3d 402 (reversing district court's decision granting defendant's motion for judgment as a matter of law and remanding for new trial); Ulfik, supra, 76 F.3d at 59 (same). Given that a trial court's ruling on the sufficiency of the evidence is subject to appellate review, it is the far better and safer practice to make such a ruling only after having the benefit of the jury's verdict. Such practice, for example, avoids the necessity of conducting a new trial if the appellate court disagrees with the trial judge's ruling of insufficient evidence. This is especially true in the context of FELA jury trials, where the test of a jury case is decidedly liberal as a result of the Supreme Court's insistence on protecting FELA plaintiffs' statutory right to a jury determination of their claim.

**H.    Damages**

The measure of damages in actions under the Federal Employers Liability Act is governed by uniform federal standards. Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 491 (1916). Under the FELA, an injured railroad employee is entitled to recover damages for any impairment to his earning capacity (past and future) plus his past and future medical expenses, pain and suffering, and mental anguish. Michigan Cent. R.R. v. Vreeland, 227 U.S. 59, 65 (1913).

The Second Circuit, sitting en banc, announced the standard for determining damages for loss of earning capacity:

> Only three elements need now be found in determining damages from loss of earning power in a total disability case -- future earning power, expectancy, and discount factor . . . . In a partial disability case there is a fourth, plaintiff's post-accident earning power.

McWeeney v. New York, N.H. & H. R.R. Co., 282 F.2d 34, 35 (2d Cir., en banc), cert. denied, 364 U.S. 870 (1960). The discount factor is charged by the trial court pursuant to Doca v. Marina Mercante Nicaraguense, S.A., 634 F.2d 30, 40 (2d Cir. 1980), and expectancy is charged by the trial court pursuant to readily available life expectancy tables. In an FELA case, the plaintiff's future normal earning power is established by evidence of plaintiff's railroad wage history in the years or months leading up to his injury. Post-accident earning power is established by evidence of the plaintiff's earning record after the accident.

Several other points concerning impairment to earning capacity must be made. "The trier of fact is not required to use any particular formula in computing the amount of the loss." Bradshaw v. United States, 443 F.2d 759, 772 (D.C. Cir. 1971). No expert economic testimony is required. Baynum v. Chesapeake and Ohio Ry. Co., 456 F.2d 658, 660-61 (6th Cir. 1972). No expert medical testimony estimating the exact percentage of physical disability or earning impairment is required. Alexandervich v. Gallagher Bros. Sand & Gravel Corp., 298 F.2d 918, 921 (2d Cir. 1961). It has long been recognized that "[e]vidence descriptive of the injury . . . will usually speak for itself as to loss of earning power." C. McCormick, Handbook on the Law of Damages §86 (1935). Indeed, no specific expert testimony or economic formulae are required because the existence of any future impairment to earning capacity is a disputed issue of fact that only the jury can determine. Alexandervich, supra. Information such as the plaintiff's age, skill, talents, experience, employment history, station in life, life expectancy, pre-accident earnings, and post-accident earnings provide the jury with the means to make a judgment on the issue of impairment to earning capacity. See, e.g., 25 C.J.S.: Damages § 87.

FELA plaintiffs are entitled to an award for their pain and suffering, Ches. & Ohio

10

Ry. v. Carnahan, 241 U.S. 241, 243-44 (1916), as well as for their mental anguish caused by the humiliation and embarrassment of scars, mutilation, disfigurement, or disability. Erie R.R. Co. v. Collins, 253 U.S. 77, 85 (1920).

An FELA plaintiff is entitled to an award for the medical expenses he has incurred as a result of his injury. The Second Circuit has affirmed that Metro-North employees are entitled to claim their medical expenses at trial even when the Railroad has paid part or all of those expenses. Manes v. Metro-North Commuter Railroad, 801 F. Supp. 954, 965-66, aff'd., 990 F.2d 622 (2d Cir.1993). This is because of the effect of Section 55 of the FELA, 45 U.S.C. § 55, on the specific language of Metro-North's collective bargaining agreements. When Metro-North itself does not pay the medical expenses for an on-the-job injury, but rather the bills are paid through an employee's own general medical insurance coverage secured by his labor, then those medical expenses are a collateral source claimable as damages at the employee's FELA trial. An FELA plaintiff's medical expenses are not a collateral source only if there is explicit language in the plaintiff's collective bargaining agreement specifically declaring a setoff from any FELA verdict or settlement.

Moreover, the plaintiff is entitled to admit her medical bills into evidence both to show the nature and extent of her medical treatment and to serve as a partial basis for future medical expenses, with the trial judge if necessary later reducing the verdict by the amount of the medical expenses. See, e.g., Taenzler v. Burlington Northern, 608 F.2d 796, 802 (8th Cir. 1979). The plaintiff's medical bills show the course of her medical treatment, including dates and the various types of treatment experienced. As such, they are relevant to show the fact of the plaintiff's injury and any pain and suffering related thereto. Also, medical bills must be admitted in order to establish a proper foundation for an award for future medical expenses. The necessity for future medical expenses must be proved with reasonable certainty, Rouse v. Chicago, Rock Island & Pacific R. Co., 474 F.2d 1180, 1184 (8th Cir. 1973), and the Second Circuit has held that a sufficient basis for future medical expenses is created when the past medical bills are admitted into evidence and a doctor testifies concerning probable future treatment. Dindo v.

Grand Union Company, 331 F.2d 138, 142 (2d Cir. 1964).  See also, Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035, 1040 (10th Cir. 1969), and Maxworthy v. Horn Electric Service, Inc., 452 F.2d 1141, 1145 (4th Cir. 1972).

                                           FOR THE PLAINTIFF,

By _____
Scott E. Perry
CAHILL, GOETSCH & MAURER, P.C.
43 Trumbull Street
New Haven, Connecticut  06511
(203)777-1000
ct17236

## Certificate of Service

      This is to certify that a copy of the foregoing was sent first class mail, postage prepaid to:

Brian Molinari, Esq.
Landman Corsi Ballaine & Ford
120 Broadway, 27th Fl.
NY, NY 10271

Nancy Lyness, Esq.
White Fleischner & Fino, LLP
140 Broadway - 36th Fl.
NY, NY 10005

On May 27, 2004.

                                                Scott E. Perry